11

1   his burden of production favoring detention, it does not

2   disappear entirely but remains a factor to be considered

3   among those weighed by the district court.

4           This is citing *United States v Rodriguez*, 950

5   F.2d 85, *United States v Martir*, 782 F.2d 1141, both

6   Second Circuit cases, the first from 1991, the second from

7   1986.

8           And the *Mercedes* case, at 254 F.3d 433.

9           The government retains the ultimate burden of

10  persuasion by clear and convincing evidence that the

11  defendant presents a danger to the community.  The

12  government also retains the ultimate burden of persuasion

13  that the defendant presents a risk of flight by a

14  preponderance of the evidence.

15          To determine whether the presumptions of

16  dangerousness and flight are rebutted, I must consider the

17  nature and circumstances of the crime charged, the weight

18  of the evidence against the defendant, the history and

19  characteristics of the defendant, including family ties,

20  employment, past conduct, and the nature and seriousness

21  of the danger to the community for the individual.

22          I don't think there is any difference in your

23  opinions about the nature and the circumstances of the

24  crime charged.  It is a very serious crime, I have already

25  said that, and of course the penalties are very heavy.

12

1       Now, the weight of the evidence against this

2   defendant.  Is it circumstantial or direct?  I need a

3   proffer from the government more than a recorded

4   conversation, which indeed is subject to many

5   interpretations and which formed the bulk of the

6   discussion at our last meeting.

7       So, Mr. Ryan, I leave it to you at this point.

8       MR. RYAN:  Judge, the evidence that the

9   government will present at trial will show that this

10  defendant was a member of the Gambino crime family

11  supervising the drug distribution of an individual by the

12  name of Gus Fakiris who had a drug delivery service that

13  he used.

14      THE COURT:  Who is *he*?

15      MR. RYAN:  Mr. Fakiris.

16      MR. FROCARRO:  He is the fellow with the tapes,

17  Judge.

18      THE COURT:  I know that.  I didn't know if the

19  pronoun referred to your client or Mr. Fakiris.

20      MR. FROCARRO:  Okay.

21      MR. RYAN:  Mr. Zaccaro had a drug cultivation

22  and distribution system, hydroponic drugs, and was an

23  associate of the Gambino crime family.

24      The evidence will show that Mr. Zaccaro made an

25  arrangement with this defendant, Mr. Ruggiero, to

13

1    essentially buy access to the drug distribution

2    individual, Gus Fakiris, he controlled to distribute the

3    drugs produced by Mr. Zaccaro.

4         There was an arrangement, a fee arrangement,

5    made between Mr. Zaccaro and --

6         THE COURT:  Sort of a distribution route?

7         MR. RYAN:  It was a distribution route that was

8    essentially paid for per pound.

9         Arrangement was made for payments per pound to

10   Mr. Ruggiero for the drugs that were then -- the Zaccaro

11   drugs that were then sold to Mr. Fakiris.

12        Mr. Fakiris then was beaten by Mr. Ruggiero and

13   others and forced to comply with this, and received

14   additional beatings throughout the period of time that he

15   was under the direction and control of Mr. Ruggiero

16   distributing Mr. Zaccaro's drugs, and delivered hundreds

17   of thousands of dollars of cash to Mr. Ruggiero in

18   connection with this drug distribution of Mr. Zaccaro's

19   drugs.

20        THE COURT:  Will the evidence be circumstantial

21   or direct?

22        MR. RYAN:  It will be both, Judge.  Both the

23   individuals that were involved in the conversations as

24   well as coconspirators who were aware of the arrangement

25   as well.  And of course there will be direct evidence

Dominick M. Tursi, CM, CSR
Official US District Court Reporter

14

1    concerning the drug operations.

2           THE COURT:  And the violence?

3           MR. RYAN:  And the violence.

4           THE COURT:  The physical violence.

5           MR. RYAN:  The physical violence.

6           MR. FROCARRO:  Judge, in terms -- he says

7    direct.  They have two cooperating witness.  It's

8    Mr. Fakiris and Mr. Zaccaro.

9           THE COURT:  I don't have any idea what they

10   have.  Do you know what they have?

11          MR. FROCARRO:  I do know.

12          The tapes I brought out to your Honor contradict

13   every word Mr. Ryan said.  I'm not saying Mr. Ryan is not

14   credible.  I'm saying that Mr. Fakiris is not credible.

15          THE COURT:  That is up to a jury.

16          MR. FROCARRO:  But, Judge, no, that is up to the

17   tapes.

18          The tapes, they say flat out, Mr. Fakiris says

19   to Mr. Ruggiero that Mr. Zaccaro was the one who was

20   visiting violence upon him.  And in the context of their

21   conversations, Mr. Ruggiero says to Mr. Fakiris:  *I told*

22   *you you have to be out of this business.  You have to have*

23   *nothing to do with it.*

24          There is a concern on those tapes from Mr.

25   Fakiris that Mr. Zaccaro was cooperating.   Once Angelo

Dominick M. Tursi, CM, CSR
Official US District Court Reporter

15

1    dusts off the hot seat for us, if Mr. Zaccaro is

2    cooperating, Fakiris should have concern for himself, and

3    Mr. Ruggiero has no concern.

4         THE COURT:  Once again we are reading things

5    into those tapes.  I don't want to hear any more about the

6    tapes.

7         MR. FROCARRO:  Judge, you have a proffer from a

8    government lawyer.  There is not a witness under oath,

9    judge.  And what you have is his cooperating witness'

10   actual words for tapes that were produced at the direction

11   of the government, Judge.

12        THE COURT:  You are saying those tapes --

13        MR. FROCARRO:  That should corroborate --

14        THE COURT:  Excuse me.  Are you saying that

15   those tapes, that conversation, which is certainly subject

16   to interpretation, absolves your client from any claim of

17   any alleged behavior against Mr. Fakiris?

18        MR. FROCARRO:  I think it absolutely does.  It

19   absolutely does.  Because what he says is that Mr. Zaccaro

20   put a gun to his head so he stays in the business.

21        And he says to Mr. Ruggiero, I know you didn't

22   know about this.  All right?  And Angelo says to him, you

23   shouldn't have been in the business with this guy.

24        Judge, I think it absolutely clears him.

25        That is not the only tape.  There is other tapes

16

1    between Mr. Paradisio, who is supposed to be a captain

2    with this organized crime family, and Mr. Fakiris.  And on

3    it Fakiris says to Mr. Paradisio that I lied to you guys,

4    meaning him and Ruggiero, all along.  I'm still dealing

5    drugs even though I was instructed to get out of that

6    business.

7              That further corroborates that Mr. Ruggiero is

8    not involved.

9              And the other thing I want to say, judge, is, I

10   know prosecutors are allowed to proceed by proffer.  It is

11   a big advantage for them, you know, if I don't have access

12   to these witnesses on the witness stand.

13             But what Mr. Ryan represented to the court in

14   order to get my client remanded way back when was that

15   Mr. Ruggiero was responsible for supervising this

16   marijuana thing for the Gambino crime family.

17             If your Honor may recall, during the last court

18   appearance, in order to diffuse my argument about the

19   tapes, what Mr. Ryan said was now that Mr. Ruggiero was

20   doing it behind Mr. Paradisio's back.

21             That is totally inconsistent with what they

22   argued in order to get him remanded.  That is the only

23   answer they could give for the tapes, because it is clear

24   that Mr. Ruggiero is not involved in Mr. Fakiris' or

25   Mr. Zaccaro's activities.

17

1       In fact one statement Mr. Ruggiero makes to

2   Mr. Fakiris on the tapes is, you know, I never liked

3   Zaccaro, that's why I never had anything to do with this

4   guy.

5       If Mr. Fakiris is wearing a wire for the

6   government.  All he has to say to Mr. Ruggiero is, *What*

7   *are you talking about?  We have been dealing drugs with*

8   *this guy for the last three years.  What are we going to*

9   *do?  He is going to become a cooperator.*

10      With all due respect, Judge, it is not subject

11  to any other interpretation that my client wasn't

12  involved.  And why I emphasize it is, again, I'm not going

13  to get this witness on the stand before my client sits in

14  jail for a year, and now more time possibly.  The only

15  thing I have --

16          THE COURT:  We are talking about two months.

17          MR. FROCARRO:  Judge, two months:  It is easy

18  for him to say.  Way back in October when we demanded a

19  trial he said February.

20          THE COURT:  Let's not change the position here.

21  We can look at a trial in early May, for sure.

22          Now, anything more?  Not on the tapes.  Anything

23  else about the dangerousness --

24          MR. FROCARRO:  I just want to say one thing

25  about the trial, too.

18

1        THE COURT:  No.  I'm going to ask you to address

2    the factors that I am considering now.

3        MR. FROCARRO:  Okay.  Another factor in terms of

4    the strength of their case?

5        THE COURT:  No.  The strength of the case.

6        MR. FROCARRO:  Another factor, judge?

7        They seized drug records from those marijuana

8    warehouses.  There is not one thing in those records that

9    links Mr. Ruggiero to the marijuana growing.  Not one

10   thing.

11       THE COURT:  In terms of surveillance.  I thought

12   he said it had to do with distribution, not the growing.

13       MR. FROCARRO:  They had records of who they were

14   distributing to.

15       THE COURT:  I don't know.

16       MR. FROCARRO:  I'm telling your Honor.  I know a

17   lot more about it by virtue of obviously my familiarity

18   with the case.

19       Not one thing linking Angelo.  No records

20   whatsoever in the world linking Angelo to that operation.

21       In terms of surveillance, the Nassau County cops

22   had the growing warehouses under surveillance.  Not one

23   surveillance of Angelo Ruggiero ever having been there,

24   judge.

25       In terms of his history and characteristics, he

19

1   has no priors.

2          THE COURT:  We are not up to that yet.

3          MR. FROCARRO:  I'm jumping?

4          THE COURT:  We are talking about the strength of

5   the case.

6          MR. FROCARRO:  Judge, then I really don't think

7   there is anything else that I can say to convince your

8   Honor that they do not have a strong case here.

9          THE COURT:  Mr. Ryan?

10          MR. RYAN:  Judge, the evidence is of the

11   individuals who were involved, primarily.  Certainly,

12   there is substantial evidence to show that the operation

13   did exist, that Mr. Fakiris was involved.

14          Mr. Fakiris' testimony will show that he was

15   under the control of Mr. Ruggiero because of his

16   association with the Gambino crime family and that the

17   arrangements were made as we have indicated.

18          The tapes occurred later on as an extortion from

19   his junk business, from when the Gambino crime family was

20   demanding money from the junk business after Mr. Fakiris.

21          THE COURT:  Who, *he*?

22          MR. RYAN:  Mr. Fakiris was in fact told by them

23   and indicated --

24          THE COURT:  Who is *them*?

25          MR. RYAN:  Excuse me.  Sorry, Judge.  He was

20

1    told by Mr. Ruggiero and Mr. Paradisio to get out of the

2    marijuana business at one time and they were just going to

3    extort money from his junk business in The Bronx.  And

4    that is in fact what they were doing when the tapes were

5    made.

6            It was some years after he had indicated to them

7    that he had stopped dealing with Mr. Zaccaro.  And that is

8    the nature and content of those tapes.

9            THE COURT:  All right.  Now let's talk about

10   history and characteristics of the defendant.

11           MR. FROCARRO:  Judge, my client has no prior

12   convictions for anything involving violence whatsoever.

13           THE COURT:  He does have a pending case in the

14   Southern District.

15           MR. FROCARRO:  That is a case where Judge

16   McKenna heard all the evidence and he said, you know what?

17           THE COURT:  What are the charges?

18           MR. FROCARRO:  Extortion involving Mr. Fakiris.

19   That's what charges are.

20           Judge McKenna heard the tapes, your Honor, he

21   didn't focus on the extortion portion, but if you hear the

22   tapes, all my client ever says to him:  *I love you guys.*

23   *We have been friends for years.  I have never taken*

24   *anything off you that I didn't work for.  What's going on*

25   *here?*  That's it.

21

1          Judge McKenna heard the tapes and immediately

2   ordered my client released on a bond.

3          MR. RYAN:  I believe, judge, it is a

4   multimillion dollar bond with restrictions, for that

5   particular case.

6          THE COURT:  All right.  Other characteristics

7   and history of the defendant:  Family ties, employment,

8   community ties, past conduct.

9          MR. FROCARRO:  Judge, I know they are not

10  labeling it that he is a flight risk, but in terms of his

11  family ties, he has very strong ties to the community.

12          He has a wife and three young children.  He had

13  legitimate employment, at the time he was arrested, for

14  quite a period of time prior to his arrest.  And in fact

15  he files tax returns, judge.

16          THE COURT:  What is that employment?

17          MR. FROCARRO:  He worked at an auto shop

18  business, Judge.  That is where he worked, auto parts

19  business.

20          MR. RYAN:  Junkyard, judge, essentially.

21          MR. FROCARRO:  It is more politically correct an

22  auto parts business, Judge.  That is where he works.

23          THE COURT:  Where does he live?

24          MR. FROCARRO:  He lives with his wife and kids.

25          THE DEFENDANT:  I live in Howard Beach.  I live

22

1    in an apartment.

2         MR. FROCARRO:  He doesn't own his house.  They

3    live in an apartment.

4         THE COURT:  All right.  The nature and

5    seriousness of the danger to the community or to an

6    individual.

7         What is the danger, to whom, and based on what?

8         MR. RYAN:  Judge, there have been threats made

9    against Mr. Fakiris by numerous individuals as a result of

10   the fact that it has been revealed that he's cooperating

11   in this case.  We believe that because --

12        THE COURT:  Numerous individuals.  But what

13   about this defendant?

14        MR. RYAN:  We believe, judge, that this

15   defendant, which we are alleging is a member of the

16   Gambino crime family, has the associations, connections,

17   and wherewithal to be able to cause harm to Mr. Fakiris.

18        We believe that Mr. Fakiris is at risk.  At

19   extreme risk.  We have recommended that he go into the

20   witness protection program as quickly as possible.  And we

21   believe that this defendant's freedom would cause

22   potential harm to Mr. Fakiris.

23        There is long history in the Gambino crime

24   family of dealing violence to witnesses and to the

25   administration of justice, and we believe that this

23

1    defendant has connections that would be able to effect

2    harm to individuals in this case.

3          MR. FROCARRO:  Judge, with all due respect,

4    Mr. Fakiris would be the best witness that I could have in

5    my case.

6          THE COURT:  You are going to have him your case.

7          MR. FROCARRO:  I wouldn't want a hair touched on

8    his chest.  He's not going to say anything that's going to

9    hurt my client.

10         He would be the most important witness we can

11   call, No. 1, because he's going to clear my client.

12         No. 2, my client knows if anything happened to

13   that fellow, all his statements come in without cross,

14   which would be the worst thing that could happen to us.

15         In terms of being scared of Mr. Ruggiero, here

16   is what your Honor has to consider.

17         Mr. Ruggiero's mother was dying from cancer at

18   the time that he was arrested and your Honor was gracious

19   enough to allow him to go to his mother's wake.

20         This man was so afraid of Mr. Ruggiero that he

21   had the gall to show up at his mother's wake.  Everyone

22   knew he was cooperating at the time.  Nothing happened to

23   him.  He was there.  He's about the safest individual

24   there is on the place of the earth right now, judge.

25         THE COURT:  You might want to pass that on to

24

1    Mr. Fakiris.

2    MR. RYAN:  I'm not going to say anything, judge.

3    THE COURT:  Anything else as far as the

4    community or an individual?

5    MR. RYAN:  No, judge.  I believe that the record

6    is sufficiently clear.

7    MR. FROCARRO:  Judge, if I can just.  The

8    package that I have offered to your Honor is a very

9    substantial bond.  And it is a restricted bond.  It is a

10   bond where --

11   THE COURT:  You know, that is my next question

12   to the government.

13   If he is under house arrest, what is the fear of

14   the danger to the community?

15   MR. RYAN:  It is the individuals he meets with,

16   Judge, the individuals that he associates with, and the

17   planning that he can do under those circumstances.  Things

18   that he would not be able to do with those individuals at

19   a jail because people would not wish to be identified.

20   THE COURT:  Is there no way of making certain

21   that he doesn't meet?

22   MR. RYAN:  Judge, under the Second Circuit

23   ruling in *US V Arena*, the Second Circuit has indicated

24   that the restrictive type of witness lists, no organized

25   crime visitors, the type of expense and the type of

25

1    personnel that would be needed to be able to put the same

2    type of restrictions on is just not an appropriate way to

3    deal with these type of situations.

4          They have said in *Arena* that if the court is

5    thinking of all those restrictions, then you might as well

6    keep him in jail.

7          And that is the problem that we have, because we

8    would have to essentially post either a guard or some sort

9    of limitation; to put, to record his phone calls, to be

10   able to ensure that that is the only method he has of

11   communicating, to be able to restrict visitors, all the

12   types of things that he is under those restrictions, now,

13   of necessity, given the way the jail works.  To be able to

14   do that artificially in a home location just is not a

15   practical solution and not -- even if we tried to do it,

16   essentially we can't guarantee that's done.

17         MR. FROCARRO:  Judge, I'm very familiar with the

18   Arena case.

19         So your Honor can apply it in the proper

20   context, it was a case involving the Colombo family war

21   where 17 people were murdered, judge.  They were out in

22   the street, like Wild Bill Hickock, shooting people.  That

23   is the context.

24         Patty Amatto was the defendant.  In a case of

25   allegations like that, of 11 murders, there are no

26

1    conditions or combination of conditions that can

2    reasonably assure the safety of the community.

3            You want to know?  I think they were right.

4    There was this interfamily war going on where everyone was

5    getting shot.

6            THE COURT:  I'm sure the circuit will be

7    thrilled to hear that you think that.

8            MR. FROCARRO:  Thanks.  But Judge, the point --

9            THE COURT:  Tell the circuit that Mr. Frocarro

10    said *right on* on the Amatto case.

11            MR. FROCARRO:  The point being you had an

12    interfamily war involved in a conspiracy to murder 17

13    people.

14            THE COURT:  I think there is something to be

15    said for it because I was thinking in terms of even more

16    restrictions.  And the point, as the Second Circuit has

17    apparently and even you say correctly found, if you are

18    talking about imposing phone restrictions and visitor

19    restrictions and access to different people restrictions,

20    then the person might as well be incarcerated.

21            I will tell you what I willing to do.  I am

22    willing to have pretrial services interview him.

23            MR. FROCARRO:  Judge, if I could just be heard a

24    little more.

25            THE COURT:  Sure.

27

1        MR. FROCARRO:  Judge McKenna heard the same

2    thing.  And you are a different judge, but he ordered

3    release on house arrest.  I have been involved in murder

4    cases.  Most recently I had a client charged with two

5    murders, before Judge Garaufis, named Restivo.

6        Judge Garaufis released him on bail on house

7    arrest and he limited who can come into the house.  He was

8    only allowed out for legal meetings and medical emergency.

9        THE COURT:  What about his telephone?

10       MR. FROCARRO:  Telephone, they didn't even need

11   to in that case.  And the government never appealed that

12   order.  But we would have consented to it, judge.  The

13   bottom line being -- and there was no motion whatsoever

14   during the course that he was out on bail.

15       I can list for your Honor about 10 or 15 other

16   cases where defendants were charged with murder, not

17   marijuana conspiracies, where the strength of their case

18   is not iron clad, not strong.  I think Mr. Ruggiero, with

19   all due respect, is a prime candidate for release on house

20   arrest.

21       If they have any problem, if Mr. Fakiris is

22   threatened, he can get remanded.  And his family, who is

23   willing to post all they own, will lose everything.

24       Under those circumstances Mr. Ruggiero would

25   really have to be a very selfish individual and very

28

1    stupid individual.

2         I have fought with your Honor continuously to

3    try to get him bail so that he could just go out and be

4    with his family.

5         If your Honor releases him, he will comply with

6    every single condition that your Honor imposes.  He will

7    not let your Honor down.  He will not let his family down.

8         MR. RYAN:  Judge, this is a presumption case,

9    and unlike those other cases it is a case --

10        MR. FROCARRO:  Those were presumption cases.

11   Murder cases.  They have probably an absolute presumption.

12        MR. RYAN:  Unlike the case before Judge McKenna,

13   there is multiple violence in this case.

14        THE COURT:  Are you saying there was no

15   presumption in the case before Judge McKenna?

16        MR. RYAN:  No.

17        MR. FROCARRO:  Crimes of violence.

18        MR. RYAN:  The extortion case?  No, judge.

19        MR. FROCARRO:  It is crimes of violence, judge.

20        THE COURT:  There was no presumption.

21        MR. FROCARRO:  It is not a presumption case.

22        MR. RYAN:  It is not a presumption case.  This

23   is a case of presumption.

24        There is a history of violence in this

25   particular conspiracy.  While there may have been

29

1    threatened violence in the extortion, there is no actual

2    violence, as exists here.

3              THE COURT:  You know, we do have pretrial, am I

4    correct, in the back the courtroom?

5              A SPECTATOR:  Yes, judge.

6              THE COURT:  How long would it take for you to

7    draw something up regarding --

8              A SPECTATOR:  In terms of --

9              THE COURT:  -- conditions and so forth?

10             A SPECTATOR:  I discussed this with Mr. Ketcham,

11   about a release order?

12             THE COURTROOM DEPUTY:  I think what the judge

13   means is, to do --

14             THE COURT:  -- a workup.

15             A SPECTATOR:  -- an amended report?  Shouldn't

16   take that long at all.

17             THE COURT:  Was there an initial report?

18             A SPECTATOR:  Yes.

19             MR. FROCARRO:  Before you look at it, I'm going

20   to tell you.  You know I'm impetuous, Judge.  If you want

21   me to shut up, I will always shut up.

22             In the initial report, the government provided

23   pretrial services with information that he was involved in

24   a murder.  They came back with a recommendation.  They

25   made no allegation he was involved in a murder.  Just so

30

1    your Honor is aware of that.

2            MR. RYAN:  Attempted murder, Judge.

3            THE COURT:  Can I ask you something?

4            MR. FROCARRO:  I have the report with me.

5            THE COURT:  I was going to ask you if you are

6    aware of any case similar to this one where the circuit

7    has found that the presumption has been overcome.

8            MR. FROCARRO:  Off the top of my head?  No.  But

9    I will be honest with your Honor, in marijuana cases --

10           THE COURT:  Please.  Always.

11           MR. FROCARRO:  -- I fight to get my clients out

12   on bail.  I'm just telling you truth.

13           THE COURT:  How many cases do you have like

14   this?

15           MR. FROCARRO:  Not in Central Islip, thank

16   goodness.

17           THE DEFENDANT:   Not in Central Islip.

18           THE COURT:  What is the case?

19           THE DEFENDANT:  I have it in my book.

20           MR. FROCARRO:  Get it.

21           THE DEFENDANT:  I've got two cases for you.

22   Second Circuit.

23           (Counsel and client confer.)

24           MR. FROCARRO:  Judge?  I'm embarrassed to say

25   that my client has two cases.

31

1        THE COURT:  Whoa!  Whoa!  Whoa.  Did you tell me

2    he had never been convicted?

3        MR. FROCARRO:  Of a crime of violence?  Never.

4        THE COURT:  Of a crime of violence.

5        MR. FROCARRO:  Sure.  Absolutely.

6        THE COURT:  Oh.  Okay.  What were you about to

7    say?

8        MR. FROCARRO:  My client, I'm embarrassed to

9    say, has two cases.  One is *United States v Ojeda Reyes*.

10       THE COURT:  Cite the case.

11       MR. FROCARRO:  846 F.2d 167.

12       THE COURT:  The library at the jail is aces,

13   right?

14       MR. FROCARRO:  *United States v Gonzales Claudio*.

15   The cite is 806 F2d 334, your Honor.

16       THE COURT:  My clerk will bring that to me.

17       MR. RYAN:  Judge, these are both cases involving

18   due process release of defendants:  one after 32 months of

19   pretrial delay that was attributable to the government,

20   and the other one where the delay was primarily

21   attributable to the government on due process grounds.

22       THE COURT:  Presumption cases?

23       MR. RYAN:  It doesn't say so, judge.

24       MR. FROCARRO:  Yes.

25       MR. RYAN:  This is a due process analysis that

32

1    has nothing to do with the presumption.

2           THE COURT:  Based on speedy trial.

3           MR. RYAN:  Based on constitutional due process

4    delay.

5           THE COURT:  Still, speedy trial as opposed to

6    statutory.

7           MR. RYAN:  As opposed to statutory.

8           MR. FROCARRO:  Can I just add one thing to that,

9    judge, then?

10          I have made an argument to your Honor that at

11   least 180 days of nonexcludable delay had accumulated

12   under the act with respect to the charge he was arrested

13   for.

14          There is also a case *United States v Gambino*

15   which the clock from that case is going to come over to

16   the second case.  So the government in my opinion has also

17   clearly violated his speedy trial rights.

18          THE COURT:  That is a whole nuther application.

19          MR. FROCARRO:  But he is saying that that is

20   what that case deals with.  So if that is a factor for

21   your Honor to consider, it is out there.

22          THE COURT:  How many prior convictions does your

23   client have for nonviolent crimes?

24          MR. FROCARRO:  For nonviolent crime, I believe

25   three, Judge.

33

1           THE DEFENDANT:  One case.  All consolidated

2    parts.

3           MR. FROCARRO:  One case, all consolidated,

4    judge.

5           THE COURT:  '96?

6           MR. FROCARRO:  Yes.

7           THE COURT:  Criminal possession of a weapon.

8           MR. FROCARRO:  Dismissed.

9           THE COURT:  Really?  Sentenced one to three

10   years.  Sentenced 10/13/98.

11          MR. FROCARRO:  That is not the case that he was

12   sentenced on, judge.  That was a bank.

13          What the case involved, so your Honor is aware,

14   it was a case where they deposited inadvertently, the

15   banks, like $100,000-something.

16          THE COURT:  It was possession of a firearm.

17          MR. FROCARRO:  But that case was dismissed,

18   Judge.  That is not the one that he was convicted of.

19          MR. RYAN:  I believe --

20          MR. FROCARRO:  He wasn't convicted.  It was

21   dismissed.

22          MR. RYAN:  They were combined, judge.  I believe

23   he was sentenced on, the illegal possession of a vehicle

24   identity number was the felony, but it appears that the

25   others were dismissed in satisfaction.

34

1        THE COURT:  What about this?  Is this the same

2    case in December of '96, grand larceny?

3        MR. FROCARRO:  That is the case with the bank,

4    judge.

5        THE COURT:  Do you want pretrial services to do

6    an amended report or not?

7        MR. FROCARRO:  If your Honor wants it.  I want

8    your Honor -- I think....

9        THE COURT:  I would like to see those two cases.

10        MR. FROCARRO:  We have them right here.

11        Can I say one other thing?  The government

12    doesn't appeal the ones that they don't think they can

13    win.

14        There are so many murder cases I worked on that

15    they got bail but --

16        THE COURT:  No.

17        MR. FROCARRO:  But there is so many.

18        THE COURT:  I can't say what the government

19    does.  You can't say what the government does.  Who knows?

20        You are saying these were appealed, though.

21        MR. FROCARRO:  Those decisions?  The cases that

22    we cite?  They are Second Circuit decisions.

23        THE COURT:  The circuit found a presumption.

24        MR. FROCARRO:  The circuit said that bail was

25    warranted under those circumstances.  He just handed me

35

1    the case.

2              THE COURT:  They were presumption cases.

3              MR. FROCARRO:  I believe that they were.  Under

4    the circumstances of the case, they found that they had

5    violated their speedy trial rights.

6              THE COURT:  So it wasn't based on what we have

7    here, which is a question of whether the presumption has

8    been overcome.

9              MR. FROCARRO:  No, I don't believe they were,

10   Judge.  They weren't.

11             THE COURT:  It is a whole different thing, then,

12   really.

13             MR. FROCARRO:  But it isn't, your Honor, with

14   all due respect, because they violated his speedy trial

15   rights clearly on the --

16             THE COURT:  If you want to make an application

17   based on speedy trial, then go ahead, but that is not what

18   we are about today.

19             MR. FROCARRO:  No.  But if that is what those

20   cases say, then that is a factor for the court to

21   consider.

22             I did argue, in the context of that, the case

23   should be dismissed with prejudice, that speedy trial had

24   been violated.

25             THE COURT:  Let's not confuse the application

36

1    again.

2        If you want a make an application based on

3    constitutional due process, failure to prosecute or to

4    observe appropriate speedy trial time, that is fine.  But

5    that is not what we are about today.

6        MR. FROCARRO:  Okay.

7        THE COURT:  I have no problem with you making

8    that application, but that is not what we are about today.

9        So is it worth while for me to read those cases?

10       MR. FROCARRO:  I would say no.

11       THE COURT:  Thank you.  Okay.

12       MR. FROCARRO:  Judge, were willing, for

13   Mr. Ruggiero, to go the extra yard.  If your Honor wants a

14   list that he can't see anyone except for certain family

15   members, we are fine with that.  If you want the phone

16   monitored, we are fine with that, which is more than Judge

17   McKenna ordered.

18       THE COURT:  Different case.

19       MR. FROCARRO:  That is why I'm volunteering

20   more.

21       THE COURT:  Different judge.

22       MR. FROCARRO:  I know.

23       THE COURT:  Off the record now.

24       (Discussion off the record.)

25       THE COURT:  We are correct that there is no

37

1    question of flight here.  You are not concerned about

2    flight.

3            MR. RYAN:  No, judge.  We are concerned with

4    dangerousness to the community and the presumption.

5            THE COURT:  I actually think that this case is

6    closest to the case of *United States v Mercedes*.  In that

7    case the district court had actually found that the

8    government had failed to meet its burden, and there was a

9    reversal based on the fact, and this is what the Circuit

10   said:  *"We agree with the government that these factors,*

11   *that is the statement that he was not a flight risk, he*

12   *was willing to be monitored at home with extensive bail*

13   *conditions, they said the factors that were considered*

14   *cannot outweigh the presumption."*

15           And then they went on to say:  *"We need not*

16   *address the broader question of whether these showings can*

17   *ever rebut the presumption of dangerousness."*

18           MR. FROCARRO:  But, judge, then you could never

19   get bail on a presumption case.  That is impossible.

20           The presumption has got to be rebutted, and in

21   conjunction with --

22           THE COURT:  In that case, which is the closest I

23   could find to this, there was not such a finding, and the

24   Circuit reversed the district court for that.

25           So I don't know what would constitute

38

1    rebutting the presumption, but I would have to say, based

2    upon what has been elicited here, considering the factors,

3    there hasn't been an overcoming of the presumption.

4              MR. FROCARRO:  But Judge, the way it is

5    rebutted, your Honor, from my knowledge of the law and his

6    prior characteristics, he has no violence --

7              THE COURT:  They say take all the factors

8    together, which I have to do.  I can't take one and not

9    the other.

10             MR. FROCARRO:  How could anybody ever get bail

11   on a production case then?  You are saying it's impossible

12   to rebut.

13             THE COURT:  I'm not saying it is impossible, but

14   it would require more than what is here.

15             MR. FROCARRO:  What more can I do?

16             THE COURT:  I don't know.  That is a rhetorical

17   question.

18             MR. FROCARRO:  But Judge, in these murder cases

19   I have worked on, there is a presumption, the same

20   presumption that your Honor is reading there, and in fact

21   in that case he was involved in violence.  It is a murder.

22   There's no more serious crime under federal law.  Life, no

23   parole.  These men are getting bail because the

24   presumption is rebutted.

25             When I say rebutted, it is rebutted in terms of

39

1    the strength of the case; rebutted in terms of the fact

2    that there are a condition or a combination of conditions

3    that will reasonably assure the safety of the community.

4        If the logic was that any time someone is

5    charged with a presumption crime they can't get bail, our

6    jails would be overflooded.  Nobody would be able to get

7    bail.  Every drug case is a presumption case, just about.

8        It is discretionary.  I am not going to give you

9    a definition of what constitutes rebutted.  It is

10   something that is discretionary.  Your Honor factors in

11   all those different factors.

12       THE COURT:  If you want me to go through all

13   the factors, I am happy to do that.  And I have to say --

14   I'm not happy to say but I have to say -- that they do not

15   weigh in favor of release if I went through them.

16       If anything, considering the very serious nature

17   of the crime, which definitely weighs in favor of

18   continued detention, the weight of the evidence in this

19   particular case, not taking into account anything that was

20   said about future indictments or other cases, weighs

21   50/50.  It doesn't way in your favor.

22       MR. FROCARRO:  But 50/50 is not a preponderance.

23       THE COURT:  It is one factor.  There is no

24   statement by the Circuit that one factor trumps all the

25   others.  That is not at all what it says.  It says the

Dominick M. Tursi, CM, CSR
Official US District Court Reporter

40

1   presumption is still a factor to be considered even if you

2   do rebut it.

3          So even assuming that you can rebut it, I would

4   still, considering all five factors, have to say the

5   detention is warranted here.  I'm sorry.

6          MR. FROCARRO:  I know.  But if you look at every

7   factor, if he had a history of violence I would tell your

8   Honor, I would actually tell your Honor you are right.

9          THE COURT:  It doesn't say history of violence.

10  It says history and characteristics.

11         The history shows prior convictions.  Perhaps

12  not of a violent nature, but there is definitely a history

13  here.  And the allegations regarding the danger to an

14  individual, the possible testifying witnesses, you know, I

15  have to say --

16         MR. FROCARRO:  That is inherent in every case.

17         THE COURT:  You can't keep coming back at me.

18         I have to tell you I have gone through every

19  single factor, the way that I'm required to do, and I feel

20  comfortable now.  I was not comfortable, frankly, after

21  our last meeting because I felt that I was perhaps putting

22  the cart before the horse regarding the dismissal

23  application.  I told you that.  But I think that based

24  upon what has come forth this afternoon, that the

25  defendant must be detained.

41

1          MR. FROCARRO:  Can I just say one thing so there

2      is a complete record, judge?

3          THE COURT:  Absolutely.

4          MR. FROCARRO:  In case there is an appeal?

5          THE COURT:  Absolutely.

6          MR. FROCARRO:  I do not have to make a speedy

7      trial motion for your Honor to consider the fact --

8          THE COURT:  I think you do.

9          MR. FROCARRO:  No.  -- that he has been in.

10     That he has been in.  And also --

11         THE COURT:  Excuse me.  You are doing it on a

12     statutory basis or constitutional?

13         MR. FROCARRO:  Both.

14         THE COURT:  Well, you certainly do have to make

15     a motion, and you must detail the number of days that you

16     feel there was no consent and the days that consent was

17     given, and so forth.

18         MR. FROCARRO:  But I did that in the context of

19     my Rule 48, Judge.

20         THE COURT:  No, you did not.  You did not detail

21     from this date to this date, from this date, from this

22     conference to this conference.

23         MR. FROCARRO:  On August 17 I said we are ready

24     for trial, and every time after that I said we are ready

25     and did not waive.  I submitted that in the course of my

Dominick M. Tursi, CM, CSR
Official US District Court Reporter

42

1    Rule 48 papers.

2            THE COURT:  But that is not an application for a

3    speedy trial dismissal.

4            MR. FROCARRO:  But that is, I'm just saying in

5    the context of bail.  Your Honor, I'm sorry.  I just don't

6    agree.

7            THE COURT:  I know you don't.

8            MR. FROCARRO:  We are going to be taking an

9    appeal.  It is going to happen a lot.  That is why there

10   is appellate courts.

11           THE COURT:  Maybe yes.  Maybe no.  Who knows?

12           MR. FROCARRO:  The only thing I would say is, we

13   were ready to go to trial.  In affect the government

14   caused it to be canceled.  And the net benefit to the

15   government is that he just sits in jail.

16           THE COURT:  You can address in your speedy trial

17   motion that these days from February 5 until whatever the

18   date we actually go to trial should not count against him.

19   But, yes, it requires a written motion.

20           So the defendant at this point is remanded.

21           THE COURTROOM DEPUTY:  March 29 at 11:30, with

22   the codefendant, for a pretrial conference.

23           MR. FROCARRO:  Take care.

24           (Proceedings adjourned at 3:20 pm.)

25