**JAMES R. FROCCARO, JR.**
Attorney at Law
7 Old Shore Road
Port Washington, NY 11050
telephone: (516) 944-5062
fax: (516) 944-5064
email: JRFESQ61@aol.com

June 27, 2007

BY FAX & ECF
Hon. Sandra J. Feuerstein
United States District Court
Eastern District of New York
1010 Federal Plaza
Central Islip, NY 11722

Re: United States v. Angelo S. Ruggiero
05 Cr 196 (S-8) (SJF)

Dear Judge Feuerstein:

By letter application dated May 29, 2007, I asked this Court to reconsider Mr. Ruggiero's bail status because of the serious misrepresentations made by the government in connection with the prior proceedings. This application was not based upon a proffer, but, rather, the sworn testimony of Peter Zuccaro at the Pizzonia murder trial before Judge Weinstein. Yesterday, at the close of business I received the government' opposition to Mr. Ruggiero's request for bail.

Mr. Ruggiero has been imprisoned for more than a year based upon the proffer made by the government – that he and Michael Paradiso supervised the hydroponic marijuana operation of Peter Zuccaro for the Gambino Family for nearly a decade, including the violence employed by Zuccaro. This was the theme of the government's proffer in support of Mr. Ruggiero's detention and it was false. The sworn testimony of the government's own witness, Peter Zuccaro, ultimately contradicted this claim. In the month since I filed Mr. Ruggiero's renewed request for bail – the government has not provided this Court with one example of an excerpt from Zuccaro's testimony at the Pizzonia trial that was taken "out of context" by the undersigned. Instead, the government provided this Court with a very brief and generic unsworn response.

1

A TRUE COPY ATTEST
DATED 9/26 2007
ROBERT C. HEINEMANN
BY O'Brien CLERK
DEPUTY CLERK

Zuccaro repeatedly testified under oath at the Pizzonia trial that he kept his marijuana business a "secret" from the Gambino Family. He also told Judge Weinstein and the jury that Mr. Ruggiero's alleged role in the charged offense was as follows – that Fakiris was supposed to have been around Mr. Ruggiero or his brothers during the years 2003 and 2004, when Zuccaro sold Fakiris a total of 140 pounds of pot. By this reply, I am challenging the government to provide this Court with an FBI 302 or DEA 6 of a debriefing with Zuccaro prior to his Pizzonia trial testimony which alleges otherwise.[1]

The government's principal argument in support of Mr. Ruggiero's continued detention now is that he purportedly poses a threat of continued narcotics trafficking.[2] In support of this argument, the government has cited United States v. Leon, 766 F.2d 77 (2nd Cir. 1985) and United States v. Rodriguez, 950 F.2d 85 (2nd Cir. 1991). These cases are clearly distinguishable, however, from the case at bar.

In the Leon case, defendant Heriberto Leon's arrest resulted from electronic eavesdropping which revealed there was going to be a meeting involving cocaine, records of drug transactions, and money at his garage in Rochester, New York. Leon also sold cocaine to an undercover police officer on a prior occasion in connection with the investigation. When Leon was arrested at

---

[1] I am told that the debriefings of Zuccaro are consistent with his trial testimony and that Zuccaro alleged that Mr. Ruggiero was paid $100 by Fakiris for each of pound of pot that Fakiris purchased from Zuccaro – a total of $14,000. This is a far cry from the "hundreds of thousands in cash payments from drug dealing" that the government has now alleged that Mr. Ruggiero was paid.

[2] The government now also contends that Mr. Ruggiero was somehow "living well above his reported income level" – without providing any proof whatsoever to this Court about what his living expenses actually were. Mr. Ruggiero's reported employment income during the years 2003 and 2004 – the years Zuccaro alleged that his involvement in the charged offense started and ended – was $25,500 and 37,500, respectively. For this Court's information, Mr. Ruggiero and his wife lived in a very modest rental apartment during the years 2003 and 2004 and had no assets to speak of. Mr. Ruggiero's wife and children still live in the same rental apartment to this day and are near-poverty stricken.

2

his garage, the police found a loaded handgun in the jacket he had been wearing. A second load handgun which he bought was also discovered on the premises. The arresting officers also seized cocaine packed in clear plastic bags with a total street value of $100,000 and approximately $76,000 in cash from Leon's garage during his arrest. While Leon was being processed at the Monroe County jail, he also threatened two of the city officers (including the same undercover officer who had earlier purchased the cocaine from him). He told them that he would never forget what the officers had done and that he knew everything about them. He also said that he would "get even" with them and that he would "see to it" that the two officers went on a "very long vacation." Id. at 78-79.

In the Rodriguez case, the government proffered evidence at the defendant Juan Manual Rodriguez's detention hearing of taped conversations among Rodriguez, an individual named Orlando Pitre, and an undercover agent for the DEA. In one taped conversation, Pitre promised to supply the undercover agent with guns and a proven "hitman." In a subsequent taped meeting, Pitre introduced Rodriguez to the undercover agent as his "hitman" and Rodriguez agreed to commit a murder in exchange for one kilogram of cocaine. Rodriguez was ordered released by the district court on a $100,000 bond with four co-signors and no restrictions other than travel limitations. The government appealed and the Second Circuit reversed finding, in the first instance, that the government had proffered "clear and convincing" tape recorded evidence that Rodriguez was a danger to the community, and, secondly, that the bail package offered by Rodriguez – four co-signors and the $10,000 needed to obtain a bail bond – would not secure the safety of the community.[3]

On the other hand, when Mr. Ruggiero was remanded in May of 2006, the government "proffered" evidence that it possessed electronic recordings developed in the investigation of Michael Paradiso which confirmed drug tribute payments from Mr. Ruggiero to Mr. Paradiso. When I was substituted as Mr. Ruggiero's attorney of record in this matter, I challenged the government to produce these recordings. In reality, there were no recordings to support this proffer. The government did not address this misrepresentation at all in its opposition papers.

---

[3] The bail package approved by the court in Rodriguez pales in comparison to the substantial and restrictive bail package offered by Mr. Ruggiero.

3

The government also withheld consensually recorded conversation made by Gus Fakiris over a six-month period at the government's direction from the defense in this case. These tapes served to exculpate Mr. Ruggiero of the crimes charged. In sum and substance, these tapes contained demonstrable evidence that Fakiris was forbidden by Mr. Paradiso and Mr. Ruggiero to be in the pot business <u>and</u> Mr. Ruggiero never engaged in any criminal activity with Zuccaro. For the sake of brevity, I will only include a few excerpts from the tapes here. For example, during a court authorized interception on January 27, 2006, Michael Paradiso was overheard talking with an individual named Frank Romano about a meeting he was scheduled to have the next day with Gus Fakiris.[4] The following is an excerpt from that conversation on the subject of Fakiris and pot dealing:

> PARADISO: This is what I'm gonna say [to Fakiris]. Before we go any further – what did I ever do bad to you, that's number one. I want your answer. Did I ever do anything bad to you, no, I think I only did good. You was in the pot business and I told you if you wanted to stay around me – you couldn't do that. I don't do that. I don't do drugs. I don't want anybody around me to do drugs.
>
> ROMANO: <u>Or sell them</u>.
>
> PARADISO: <u>Or sell them or buy them or anything, because I told him that in the beginning. He has to say yeah – because I'm the one who told him – no you can't be here if you want to fuck around with pot. That's out of line. Okay</u>.

---

[4] The electronic recordings developed in the investigation of Paradiso were reluctantly made available to the undersigned by the government <u>via</u> a discovery letter of October 11, 2006, with the caveat that these "tape recordings were relative to the extortionate activity with Michael Paradiso." This was also not true.

4

During a consensually recorded conversation between Fakiris and Michael Paradiso the next day, the following exchange, in fact, took place between them:

PARADISO: Did I ever do anything bad to you?

FAKIRIS: Never. Never.

PARADISO: <u>The only thing I remember telling you – if you want to stay here – you have to stop selling pot</u>.

FAKIRIS: <u>Right. And I did that.</u>

Later on in the same conversation, the topic turns again to Fakiris' prior pot dealing <u>and</u> his involvement with Peter Zuccaro in the drug trade:

FAKIRIS: Do you know the story of babanya? Do you know the story with the babanya?

PARADISO: No, I don't know but I know the other guy's [Peter Zuccaro's] in trouble now. And you might be in trouble.

FAKIRIS: Yeah.

PARADISO: Cause I heard a story, I don't know if it's true. I hope it's not.

    .          .          .

FAKIRIS: <u>I told you guys I got out [of the drug business]. I juggled it around. I lied to you guys from the beginning. I stayed [in the drug business]</u>. And then he [Peter Zuccaro] got jammed up....[5]

---

[5] To place this conversation in the proper context, there was a Gang Land article written for circulation by Jerry Capeci on December 22, 2005. The article states that Peter Zuccaro, was a member of the crew of capo, Ronald Trucchio. And, that Zuccaro who was indicted as the leader of a drug ring that made millions by distributing the marijuana it grew in high-tech hot houses – was now cooperating with the government.

5

Moreover, during a conversation Fakiris had with Mr. Ruggiero – that was tape-recorded at the direction of the government on May 5, 2006 – the following exchange took place between them:

> FAKIRIS:    You know why I stopped dealing, with Bud [Peter Zaccaro], you know how much money I was making, you know why I stopped. He threatened to kill me.
>
> RUGGIERO:  I don't know.
>
> FAKIRIS:    He threatened to kill me.
>
> RUGGIERO:  I don't know that, you should have come to me and told me back then.
>
> FAKIRIS:    Now you know.
>
> RUGGIERO:  Peter was nothing but a greedy mother-fucker and that's why I never had nothing to do with him – ever.
>
> FAKIRIS:    Now you know and it's still haunting me [that Zuccaro may be cooperating with the government].
>
> RUGGIERO:  It ain't gonna haunt you, you will be fine with that... The truth of the matter, what did I tell you.... You can't have no part of it [the drug business].

Clearly, if any of the tape-recorded evidence secretly gather by the government had supported the characterization of Mr. Ruggiero as a danger to the community – the government would have introduced it at his detention hearing. Instead, Mr. Ruggiero introduced the contents of these surreptitiously recorded conversations as "rebuttal evidence."

6

In the Rodriguez case, the Second Circuit Court of Appeals stated that a finding of dangerousness under the Bail Reform Act must be supported by "clear and convincing evidence" – and the government retains the burden of proving dangerousness by "clear and convincing evidence" even where the statutory presumption has been invoked. The Court also explained that although the government retains the burden of persuasion at a detention hearing, a defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption – like the tape recordings and Pizzonia trial testimony offered by Mr. Ruggiero to rebut the presumption here. Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant. Rodriguez, 950 F.2d at 88.

In the Pizzonia case where Peter Zuccaro recently testified, defendant Dominick Pizzonia was alleged to have committed three murders – not brokered a 140 pound pot sale. Mr. Pizzonia was also alleged to be a captain in the Gambino Family. The statutory presumption under the Bail Reform Act applied to the murder charges. Notwithstanding the presumption, Mr. Pizzonia was released on a substantial secured bond with electronic monitoring during the pendency of trial – without incident.[6]

In sum, the government's material misrepresentations permeated the prior bail proceedings and affected their fundamental fairness. The government's conduct should not be countenanced for it will set a precedent. Mr. Ruggiero has also provided this Court with evidence tending to rebut the presumption and offered a bail package that is both very substantial and restrictive. He should be released on bail.

                          Respectfully submitted,

                          /JRF/

                          James R. Froccaro, Jr.

JRF:tp

---

[6] For Your Honor's information, defendants Pizzonia and DiConciglio (who was also granted bail) were acquitted of all the murder charges Zuccaro implicated them in at trial.