**JAMES R. FROCCARO, JR.**
Attorney at Law
7 Old Shore Road
Port Washington, NY 11050
telephone: (516) 944-5062
fax: (516) 944-5064
email: JRFESQ61@aol.com

December 12, 2006

BY ECF & FAX W/ENCLS.
Hon. Sandra J. Feuerstein
United States District Court
Eastern District of New York
1010 Federal Plaza
Central Islip, NY 11722-4454

      Re:  United States v. Angelo S. Ruggiero
           06 Cr 305 (SJF)

          United States v. Angelo S. Ruggiero
           05 Cr 196 (S-6) (SJF)

Dear Judge Feuerstein:

      I am the attorney for Angelo Ruggiero. This letter is submitted in support of Mr. Ruggiero's request that he be released on bail pursuant to a significant and restrictive bail package. Namely, a $2 million bond, secured by the real property of his loved ones, with a condition that he be placed on 24-hour house arrest with electronic monitoring – during the pendency of trial. The bail package offered here is identical to the package that was approved for Mr. Ruggiero's release by the Hon. Lawrence J. McKenna, United States District Court Judge for the Southern District of New York, on November 29, 2006, in Mr. Ruggiero's related Southern District criminal case. A copy of the ECF filing for this transaction

1

A TRUE COPY
ATTEST
DATED 9/2/... 2'07
ROBERT C. HEINEMANN
                                    CLERK
BY [signature]
                         DEPUTY CLERK

from the U.S. District Court for the Southern District of New York is enclosed herein.

Mr. Ruggiero presently has two criminal cases pending before Your Honor in this district. He was arrested on May 8, 2006, and charged, alone, in an indictment with conspiracy to distribute marijuana and conspiracy to launder money. This indictment bears criminal number 305 of the year 2006. Based upon a "proffer" made by the government, Mr. Ruggiero was remanded in this case. Months later, a sixth superseding-indictment was filed in a separate criminal case pending before Your Honor – which added Mr. Ruggiero as a defendant and charged him with the same crimes. This indictment bears criminal number 196 of the year 2005.

As will be demonstrated below, the government has made material misrepresentations, withheld critical <u>Brady</u> material, and manipulated the system in an attempt to deny Mr. Ruggiero a speedy trial in this district. The government's conduct should not be countenanced. Mr. Ruggiero should be granted bail in these proceedings as well.

## Mr. Ruggiero's Bail Proceedings in this District

The government was permitted to present its evidence in support of Mr. Ruggiero's detention by way of a proffer here. In sum and substance, the government's "proffer" about Mr. Ruggiero's alleged involvement in the charged marijuana conspiracy was as follows:

- that the marijuana "grow" operation was headed by Peter Zuccaro, a Gambino associate for many years;

- that Zuccaro "sought Ruggiero's assistance in distributing wholesale quantities of marijuana";

2

- that Mr. Ruggiero was "a member of the crew of Gambino Crime Family Capo, Michael Paradiso";

- that a portion of the drug proceeds were delivered by Mr. Ruggiero as "tribute" to his superior in the Gambino Family, Michael Paradiso;

- that "electronic recordings developed in a separate investigation of Paradiso confirmed delivery of these [drug tribute payments] by Ruggiero" to Paradiso; and

- Mr. Ruggiero was going to be indicted for extortion threats, beatings and involvement in attempted murder in the Eastern District of New York.

These unsworn allegations are all contained within pages 2-3 of a letter, dated May 18, 2006, that AUSA Ryan wrote to Your Honor in support of the government's detention request. A copy of the letter is enclosed. The government's "proffer" was relied upon by the court <u>and</u> Mr. Ruggiero was ordered detained during the pendency of trial. He has been incarcerated for more than 7 months now. During this time frame he has, among other things, lost his mother to cancer.

For Your Honor's information, Mr. Ruggiero was never indicted for any other crimes in the Eastern District. He was, however, recently indicted in the Southern District of New York for extortion conspiracy and extortion. I now know by virtue of the discovery provided in the Southern District case before Judge McKenna on November 15, 2006 – <u>that the government purposely withheld Brady material in the Mr. Ruggiero's marijuana case before Your Honor.</u>

3

The principal cooperating witnesses against Mr. Ruggiero in the marijuana trafficking prosecution are Gus Fakiris and Peter Zuccaro. These men were partners in the drug trade. <u>The discovery recently provided by prosecutors in the Southern District consist of consensually recorded conversations made by Fakiris at the government's direction with, among others, Mr. Ruggiero. These tape recordings contain evidence which clearly exculpates Mr. Ruggiero of the drug charges filed against him here.</u> The tapes also prove that Gus Fakiris and Peter Zuccaro are much less than reliable sources of information for the government regarding Mr. Ruggiero.

For example, during a court authorized interception on January 27, 2006, Michael Paradiso was overheard talking with an individual named Frank Romano about a meeting he was scheduled to have the next day with Gus Fakiris.[1] The following is an excerpt from that conversation on the subject of Fakiris and marijuana trafficking:

PARADISO: This is what I'm gonna say [to Fakiris]. Before we go any further – what did I ever do bad to you, that's number one. I want your answer. <u>Did I ever do anything bad to you, no, I think I only did good. You was in the pot business and I told you if you wanted to stay around me – you couldn't do that. I don't do that. I don't do drugs. I don't want anybody around me to do drugs.</u>

ROMANO: <u>Or sell them.</u>

PARADISO: <u>Or sell them or buy them or anything, because I told him that in the beginning. He has to say yeah – because I'm the one who told him – no you can't be</u>

---

[1] The electronic recordings developed in the investigation of Paradiso were reluctantly made available to the undersigned by the government <u>via</u> a discovery letter of October 11, 2006, with the caveat that these "tape recordings were relative to the extortionate activity with Michael Paradiso." A copy of the letter is enclosed.

4

>             here if you want to fuck around with pot.  That's out of
>             line.  Okay.

During a consensually recorded conversation between Fakiris and Michael Paradiso the next day, the following exchange, in fact, took place between them:

> PARADISO: Did I ever do anything bad to you?
>
> FAKIRIS:   Never.  Never.
>
> PARADISO: The only thing I remember telling you – if you want to stay here – you have to stop selling pot.
>
> FAKIRIS:   Right.  And I did that.

Later on in the same conversation, the topic turns again to Fakiris' prior drug dealing <u>and</u> his involvement with Peter Zuccaro in the trade:

> FAKIRIS:   Do you know the story of babanya?  Do you know the story with the babanya?
>
> PARADISO: No, I don't know but I know the other guy's [Peter Zuccaro's] in trouble now.  And you might be in trouble.
>
> FAKIRIS:   Yeah.
>
> PARADISO: Cause I heard a story, I don't know if it's true.  I hope it's not.
>
> FAKIRIS:   Bo, listen.  He [Zuccaro] might think something.
>
> PARADISO: You did do it before, but he has to prove that, if he [Zuccaro] is a rat, I don't know.  I heard he might be a rat.  So you might have a problem, but I don't think you have a real problem because, unless they could

5

>confirm that with other people. His word.
>
>Depends how long you're out of the business. You gotta have a new criminal thing.[2]

. . .

FAKIRIS: <u>I told you guys I got out [of the drug business]. I juggled it around. I lied to you guys from the beginning. I stayed [in the drug business]</u>. And then he [Peter Zuccaro] got jammed up. He went and surrendered himself on the babanya thing  He went down to Florida. Came back. Surrendered himself.

Moreover, during a conversation Fakiris had with Mr. Ruggiero – that was tape-recorded at the direction of the government on May 5, 2006 – three days before Mr. Ruggiero's arrest in this case – the following exchange took place between them:

FAKIRIS: You know why I stopped dealing, with Bud [Peter Zaccaro], you know how much money I was making, you know why I stopped. He threatened to kill me

RUGGIERO: I don't know.

FAKIRIS: He threatened to kill me.

---

[2] To place this conversation in context, I have enclosed for Your Honor's review, a copy of a Gang Land article written for circulation by Jerry Capeci on December 22, 2005. The article states that Peter Zuccaro, was a member of the crew of capo, Ronald Trucchio. And, that Zuccaro who was indicted as the leader of a drug ring that made millions by distributing the marijuana it grew in high-tech hot houses – was now cooperating with the government.

6

RUGGIERO: I don't know that, you should have come to me and told me back then.

FAKIRIS: Now you know.[3]

RUGGIERO: <u>Peter was nothing but a greedy mother-fucker and that's why I never had nothing to do with him – ever.</u>

FAKIRIS: Now you know and it's still haunting me [that Zuccaro may be cooperating with the government].

RIGGIERO: It ain't gonna haunt you, you will be fine with that... The truth of the matter, what did I tell you

FAKIRIS: Back off

RUGGIERO: Back off and get out [of the drug business]

FAKIRIS: I did the next day

RUGGIERO: Get away from it

FAKIRIS: The next day

RUGGIERO: <u>You can't have no part of it [the drug business]</u>.[4]

---

[3] For Your Honor's information, at the Southern District detention hearing, the government "proffered" the following information to the court – that Mr. Ruggiero had threatened to kill Fakiris if he did not continue to assist Mr. Ruggiero in his marijuana business. The tape-recorded statements of Fakiris and Mr. Ruggiero, however, seriously undermined the veracity of that allegation.

[4] The excerpts of the recorded conversations I have cited are from transcripts provided to me by the government in the Southern District case before Judge McKenna.

7

Obviously, this "indisputable" tape-recorded evidence undercuts the government's entire theory of prosecution, including its proffer in support of Mr. Ruggiero's detention here.[5] The government represented to this Court in support of its detention application that electronic recordings developed in the investigation of Paradiso confirmed delivery of drugs proceed "tribute" payments by Mr. Ruggiero to Paradiso. <u>This representation was clearly false</u>. The government also withheld <u>Brady</u> material in the form of consensually recorded conversations made at their direction – between Gus Fakiris and Michael Paradiso and Mr. Ruggiero. <u>The tape recordings establish – in no uncertain terms – that members of Michael Paradiso's crew were prohibited from engaging in marijuana trafficking and that this prohibition was specifically conveyed to Fakiris by, among others, Paradiso and Mr. Ruggiero.</u> The recently discovered <u>consensual recordings also serve to establish that Angelo Ruggiero never had anything to do with Peter Zuccaro, including Zaccaro's marijuana trafficking or the violence that Zuccaro may have visited upon others, including fellow cooperating witness, Gus Fakiris.</u>[6]

---

[5] As stated previously herein, the government finally provided discovery to Mr. Ruggiero in this case by a letter dated October 11, 2006, a copy of which is enclosed. The government made no mention in the letter about the consensual recordings of Fakiris where, among others, Mr. Ruggiero is overheard.

[6] Your Honor should also know that while drugs records were seized during lawful searches of the "grow operations" run by Zaccaro, including records relating to drugs sales and collections as well as client lists showing drug weights and amounts – <u>no evidence was obtained during these searches or any others linking Mr. Ruggiero to marijuana trafficking</u>. In addition, while law enforcement conducted surveillance of the locations where Zuccaro grew marijuana – <u>Mr. Ruggiero was never observed at any of these locations</u>.

8

The government's misrepresentations and outright falsehoods have permeated these proceedings from the start.  <u>For example, in order to ensure a no-bail recommendation from the U.S. Pretrial Services Office, the government purposely misled the reporting officer</u>.  The government told the officer that Mr. Ruggiero had been involved in the crime of murder.  Not surprisingly, a no-bail recommendation followed from the Office.  This mis-information is contained within the Assessment of Danger portion of the Pretrial Services Report.  This was an outright falsehood, since there has never even been an allegation made that Mr. Ruggiero was involved in a murder, let alone, charged with this crime.

Judge McKenna was provided with a "proffer" by the government at Mr. Ruggiero's detention hearing before him – including much of the same information that was proffered to the courts in this district.  Judge McKenna was provided with a full and fair presentation of the evidence, however, including the tape-recorded statements of the parties involved.  Judge McKenna did not have to simply rely upon the unsworn proffer of a government lawyer in determining whether "clear and convincing evidence" of danger had been presented <u>or</u> whether a presumption had been rebutted.  Judge McKenna determined that there was a combination of conditions that would ensure the safety of the community <u>and</u> Mr. Ruggiero's appearance in court.  And, granted Mr. Ruggiero bail pursuant to a significant bond with restrictive conditions.

Judge McKenna also pointed out that in <u>United States v. Orena</u>, 986 F.2d 628, 632 (2d Cir. 1993), a case oft-cited by the government, the defendant had been charged with participating in the Columbo Family <u>intercine</u> war, where numerous individuals were murdered, including innocent bystanders.  And, that the evidence in <u>Orena</u> was not remotely similar to the evidence presented about Mr. Ruggiero.

9

## Defendants Charged With Far More Heinous Crimes Have Been Granted Bail In This District

Defendants charged with far more heinous crimes in this district have been released on bail packages similar – or even less restrictive – than the one offered to secure Mr. Ruggiero's release here - over the objection of the government. See e.g., United States v. Anthony Basile, 03 Cr 1382 (NGG) (defendant alleged to be long-time associate of organized crime charged with crimes of violence including murder and marijuana trafficking - released on $1.5 million bond with house arrest /electronic monitoring component and "no contact" list - also granted permission to work outside of is residence during the pendency of trial); United States v. Mario Fortunato, 02 Cr (ILG) (defendant alleged to be long-time associate of organized crime charge with crimes of violence including murder - released on $2 million bond with house arrest/ electronic monitoring component and a "no contact" list - also granted permission to work outside of his residence); United States v. Louis Restivo, 03 Cr 1382 (NGG) (defendant alleged to have been acting-captain in organized crime charged with crimes of violence including two murders - released on $3 million bond with house arrest/electronic monitoring component and a "no contact list"); and United States v. Robert Attanasio, 03 Cr 1382 (NGG) (defendant alleged to be long-time soldier in organized crime charged with crimes of violence including murder - released on $2 million bond with house arrest/electronic monitoring component and a "no contact" list).  None of these release orders were ever appealed by the government.

## The Government's Attempt to Manipulate the Speedy Trial Clock

As stated previously herein, Mr. Ruggiero presently has two separate criminal cases pending before Your Honor – charging him with the same crimes. This is the direct result of an effort by the government to circumvent the speedy trial clock in Mr. Ruggiero's case. When Mr. Ruggiero appeared before Judge Seybert for a detention hearing – in Your Honor's absence during the month of August – he announced that he was ready for trial. The government responded, in turn, that it would be ready in very short order, that the investigation was complete, that the witnesses were available, and it was ready to go to trial. A copy of the relevant portion of the transcript is enclosed herein. The following exchange then took place between Judge Seybert and AUSA Ryan on this point:

> THE COURT: I'm denying the defendant's application for bail pending trial, Mr. Ryan. <u>I am going to make certain that the record reflects that any other delay should be a basis for Judge Feuerstein certainly to reconsider this application.</u>[7]
>
> MR. RYAN: <u>Absolutely</u>.

See transcript of August 17, 2006, proceedings at pages 14-15 (emphasis supplied).

When Mr. Ruggiero appeared before Your Honor for a status conference, thereafter, on September 21, 2006, the government asked him to provide a waiver of the speedy trial clock until the next scheduled court appearance on November 2, 2006. I responded on Mr. Ruggiero's behalf

---

[7] Obviously, Judge Seybert did not have the benefit of considering, among other things, the <u>Brady</u> material which was purposely withheld by the government.

11

as follows:

> My client has been in custody for, I believe over four months. We want everything [the discovery] as soon as we can. We want to know what discovery we're getting and when we're going to get it. My client wants to exercise his speedy trial rights. It is not a complex case. He is [charged] alone [in the indictment].
>
> From what I understand in connection with the bail arguments, it [the trial] is simply going to be based on cooperating witnesses.
>
> So we're ready to go. And we ask Your Honor to push Mr. Ryan so we can get this right on the trial calendar.

See transcript of proceedings at pages 2-3.

Your Honor then asked AUSA Ryan whether he wanted to make the court appearance earlier. And, his response was "No, Judge. That is fine. If he doesn't want to waive, I can always supersede and bring additional charges." Rather than bring additional charges, however, the government simply charged Mr. Ruggiero with the same crimes in a separate – multi-defendant indictment that has already been pending before this Court for more than 18 months – since March of 2004 – in the hope that he would be at the mercy of remaining co-defendants with respect to the speedy trial clock. Both indictments still remain pending before this Court. The speedy trial clock, at the very least, with respect to the first indictment bearing criminal number 396 of the year 2006 has clearly run.

Obviously, the government's attempt to manipulate the clock and deny Mr. Ruggiero a speedy trial – is in stark contrast to the representation the government made to Judge Seybert just weeks before in an attempt to ensure that Mr. Ruggiero was detained during the pendency of trial.

## **The Bail Package Offered Here**

As set forth herein, I am respectfully asking Your Honor to release Mr. Ruggiero during the pendency of trial on a substantial <u>and</u> restrictive bond. The same package that was recently approved by United States District Court Judge McKenna in Mr. Ruggiero's related case. Namely, a $2 million Appearance Bond secured by real property – with a condition that he be placed on house arrest with electronic monitoring. He would also be prohibited from, among other things, having any visitors (except defense counsel) and consent to monitoring of his home telephone.

For Your Honor's information, the real property being offered by Mr. Ruggiero's loved ones to secure his release are as follows:

1. a residence owned by his cousin, James Ruggiero, located at 163-14 92nd Street, Howard Beach, New York – with an equity interest of in excess of $900,000;

2. a residence owned by his sister, Amy Ruggiero, located at 284 Intrepid Way, Indalantic, Florida – with an equity interest of about $300,000; and

3. a residence owned by his sister Amy's mother-in-law, Jeannie Powell, located at 156-14 101st Street, Howard Beach, New York – with an equity interest of about $750,000.

13

Mr. Ruggiero has very strong ties to the community. He has lived within the Eastern District of New York his entire life. He is married to the former Dawn Anzalone – and they have three young children together.[8] Prior to his arrest, Mr. Ruggiero was gainfully employed and regularly filed tax returns. And, finally, Mr. Ruggiero has no prior criminal history evincing any violence.

For all of the foregoing reasons, I respectfully request that Your Honor order Mr. Ruggiero's immediate release on bail in this case.

Respectfully submitted,


James R. Froccaro, Jr.


JRF:tp
Encls.

cc: AUSA Burton T. Ryan, by fax, w/encls.

---

[8] The U.S. Pretrial Services Office was provided with accurate information about Mr. Ruggiero's community ties, and, not surprisingly, recommended that he poses <u>no risk of flight in this case</u>.

14